IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM D. HELMICK, | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Civil Action No. 05-1540 |
| | ) | Judge David Stewart Cercone/ |
| COMMISSIONER OF SOCIAL | ) | Magistrate Judge Amy Reynolds Hay |
| SECURITY ADMINISTRATION, | ) | |
| Defendant | ) | |

REPORT AND RECOMMENDATION

I.   RECOMMENDATION

It is respectfully submitted that the Motion for Summary Judgment filed by Plaintiff [Dkt. No. 9] be denied. It is further recommended that the Motion for Summary Judgment filed by Defendant [Dkt. No. 11] be granted and that the decision of the Commissioner denying Plaintiff's application for disability insurance benefits be affirmed.

II.   REPORT

A.   **Procedural History**

Plaintiff, William D. Helmick, brought this action under 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-433.

In his application filed on March 27, 2001, Plaintiff sought both DIB and supplemental insurance benefits ("SSI") claiming disability since October 26, 1989, due to a

heart condition, pain in his back, neck and shoulder and high blood pressure (Tr. 73-76, 87).  On July 12, 2001, Plaintiff was found eligible to receive SSI benefits due to his heart condition and coronary artery disease (Tr. 13).  By notice dated July 13, 2001, however, Plaintiff's application for DIB was denied as the medical evidence did not support disability prior to December 31, 1994, which was his last date insured (Tr. 13).

Plaintiff requested and was granted a hearing before an Administrative Law Judge ("ALJ") regarding the denial of his DIB application (Tr. 13).  A hearing was held on April 18, 2002, at which time Plaintiff, who was represented by counsel, was called to testify.  On June 6, 2002, the ALJ issued a decision finding that Plaintiff had the residual function capacity to perform a substantial range of sedentary work (Tr. 512-521, Finding 12) and, therefore, was not disabled as defined under the Act (Tr. 521, Finding No. 15).  The Appeals Council denied Plaintiff's request for review on October 2, 2002, making the ALJ's decision the final decision of the Commissioner (Tr. 535-39).

Plaintiff filed a complaint with this Court seeking review of the ALJ's decision and on October 23, 2003, the case was remanded to the Commissioner to obtain vocational evidence (Tr. 538-39).  Another hearing was held before the ALJ on June 2, 2004, at which time Plaintiff, who was again represented by counsel, and a vocational expert ("VE") were called to testify (Tr. 558-84).  In a decision dated October 19, 2004, the ALJ again concluded that plaintiff was not under a disability as defined under the Act as he had the residual functional capacity to perform a significant range of sedentary work (Tr. 500-506, Findings 12-14).  On October 17, 2005, the Appeals Council determined that the ALJ's decision was the final decision of the

Commissioner and on November 9, 2005, Plaintiff filed the instant action seeking review thereof (Tr. 487-89).

    B.    **Medical History**[1]

Plaintiff presented at the emergency room at Bloomsburg Hospital on October 26, 1989, after falling from the top of a truck trailer (Tr. 122). Plaintiff underwent a cerebral CT scan as well as shoulder and cervical spine x-rays, all of which were normal (Tr. 122-128, 200-02). Plaintiff was diagnosed with a mild concussion and admitted for thirty-six hours of observation and physical therapy (Tr. 124). It was noted that the pain in Plaintiff's shoulder and spine seemed to improve and that Plaintiff signed himself out of the hospital against medical advice the next day (Tr. 122).

Another CT scan was taken on November 21, 1989, which showed no abnormalities (Tr. 197), and an x-ray of his left shoulder taken on January 19, 1990, was also normal (Tr. 196). An x-ray of his lumbar spine and pelvis taken on January 19, 1990, showed mild disc space narrowing and suspected degenerative disc disease at L4-5 (Tr. 196). Although Plaintiff indicated in February of 1990 that he still had pain in his left shoulder and lower back it was reported that he could reach over his head without any problems, reach almost to the floor, walk without difficulty and had no balance problems (Tr. 130).

Plaintiff was referred to Stephen Paxson, D.O., in January of 1990 for physical therapy due to his continued complaints of pain in his left shoulder, left hip and back (Tr. 160-

---

[1]    Because Plaintiff's alleged onset date of his disability is October 26, 1989, and he last met the insured status requirements of the Act on December 31, 1994 (Tr. 500, 501), he must establish that he was disabled between these two dates in order to qualify for DIB. See 20 C.F.R. § 404.101 (2004). Accordingly, only the medical evidence relevant to this period has been considered.

3

95).  Dr. Paxson placed Plaintiff on physical therapy three times a week which was to include heat therapy and whirlpool treatment, and prescribed Flexeril (Tr. 193-95).  In his treatment notes dated February 21, 1990, Dr. Paxson's impression was degenerative joint disease and spinal stenosis of the lumbar spine, myofascial syndrom, supratrochanterio bursitis with degenerative joint disease of left hip (Tr. 191-92).   He continued Plaintiff's physical therapy for another four weeks with the plan to increase his general physical strengthening exercises for spine and hip external rotators and extensors (Tr. 192).

On May 21, 1990, Dr. Paxson reported that Plaintiff was feeling somewhat better but noted that he has a somatic dysfunction of his cervicodorsal spine and post traumatic myofascial symptoms (Tr. 186).  Dr. Paxson increased Plaintiff's therapy for strengthening activities, prescribed Motrin and ordered Plaintiff to continue on Amitriptyline which he had apparently already been taking on an as need basis (Tr. 186).

An MRI taken in July of 1990, showed suspected left central disc herniation at C6-7 and minimal bulging disc at C5-6 (Tr. 286).

On August 13, 1990, Dr. Paxson reported that plaintiff was doing well with regard to his general pain management, was making gains in therapy and having less left shoulder pain (Tr. 160), and on September 28, 1990, decreased Plaintiff's therapy to two times a week noting that after six weeks Plaintiff would probably be discharged from therapy altogether (Tr. 161). Dr. Paxson also recommended that Plaintiff get involved in Vocational Rehabilitation so as to get into a less physical demanding job than he was in before (Tr. 161).

A residual functional capacity evaluation was performed in December of 1991 at Sharon Regional Health System (Tr. 141-152), during which Plaintiff completed an Oswestry

4

Pain Questionnaire which indicated that he fell in the severe disability category with pain being the main problem (Tr. 142). Plaintiff was nevertheless able to lift and carry at least 20 pounds with no difficulty (Tr.147, 150).

On January 22, 1992, Jose G. Amayo, M.D., reported that electromyography and nerve conduction studies in both lower extremities were normal concluding that there was no evidence of sensory neuropathy (Tr. 138-40).

Daniel Yaniko, M.D., who examined Plaintiff on December 29, 1992, for left shoulder pain and numbness, diagnosed Plaintiff with ulnar neuritis left hand and elbow, chronic cervical strain/sprain and left trapezius strain, and C7 radiculopathy with C6-7 degenerative disc disease cervical spine and noted mild acrimioclavicular separation (Tr. 274-75).

On June 22, 1993, Mitchell S. Felder, M.D., whom Plaintiff first consulted in June of 1990 following his accident, reported that Plaintiff had a diagnosis of status post concussion with post-traumatic headache, cervical myalgia with musculoskeletal pain secondary to the trauma, and chronic pain syndrom (Tr. 137). Dr. Felder also opined that Plaintiff will most likely be limited to light duty work for the rest of his work life (Tr. 137).

In a vocational profile prepared on November 9, 1994, at the request of Plaintiff's counsel, (Tr. 207-18), it was found that Plaintiff would be limited to unskilled sedentary type work (Tr. 217).

A residual functional capacity assessment was completed on June 7, 2001, by V. Rama Kumar, M.D. Based on his evaluation of the record, it was found that Plaintiff could occasionally lift/carry ten pounds, frequently lift/carry less than ten pounds, stand/walk at least

5

two hours in an eight hour work day, and sit for about six hours in an eight hour work day (Tr. 476).

  C. **Hearing Testimony and ALJ Decision**

At the administrative hearing, Plaintiff testified that he was born on January 19, 1946, making him 48 years old on his last date insured, and that he had an eighth grade education and worked as a truck driver for fifteen years (Tr. 562-63, 564). Plaintiff testified that he injured himself in 1989 when he fell about thirteen feet off the top of a truck while trying to cover the load with a tarp and landed on the left side of his body, his left shoulder and left side of his head, causing continued problems with his neck, arms and back (Tr. 565, 570). Plaintiff was subsequently hospitalized for "either two or four days" and the remainder of his therapy and treatment was on an outpatient basis (Tr. 570). According to Plaintiff, as the result of his injuries he could only sit for an hour or two and that when his back was at its worse he could only sit for fifteen minutes to a half an hour. Plaintiff also allowed that he couldn't stand for any length of time at all without support and, even then, he could stand only for about fifteen or twenty minutes (Tr. 565-68). Plaintiff testified that he could only walk about fifty feet before he would have to sit down and couldn't go up or down steps or climb a hill at all (Tr. 568-69). Plaintiff also testified that prior to his accident he liked to hunt and fish and trim his hedge but that he was unable to do so between the time of his accident and his last date insured, that he was no longer able to operate a lawnmower and that he had to lean up against the counter to do the dishes and then go lie or sit down (Tr. 571-73). As well, Plaintiff testified that he had trouble keeping his balance while showering and would have to hold on to the shower door to keep from falling, and that he had to lie down about two hours a day and up to four on bad days (Tr. 573,

574-75). Plaintiff also indicated that he had trouble sleeping between 1989 and 1994 because of the pain and that on the average he slept about four hours a night which made him tired during the day and contributed to his taking naps (Tr. 575-78).

   The VE testified that although Plaintiff's past work as a truck driver is classified as semi-skilled, medium exertion, he believed it was properly considered semi-skilled and heavy because Plaintiff also loaded and unloaded the truck (Tr. 579). The ALJ then asked the VE to consider an individual of Plaintiff's age with a limited education and vocational background, who was limited to sedentary work and was unable to engage in activities such as climbing or balancing and should not be exposed to heights or operate dangerous machinery (Tr. 579). Based upon this hypothetical question, the VE testified that such an individual could perform sedentary jobs such as a lampshade assembler, a surveillance monitor or a packager of small plastic or electrical items, all of which exists in significant numbers in the national economy (Tr. 580). The VE further testified that if the individual also required a sit/stand option, about 25% of the monitor jobs would be eliminated but the others would not pose a problem (Tr. 580). If, however, the individual had to lie down for two to four hours during the eight hour work shift then he would not be employable full time (Tr. 581). If the individual needed even an hour of unpredictable time off task in order to lie down, that individual could, according to the VE, only work part time (Tr. 581).

   Based on this evidence the ALJ found that Plaintiff had severe impairments but that they did not meet or equal the impairment listings in 20 C.F.R. pt. 404, App. 1, Subpart P (Tr. 505, Findings 3, 4). The ALJ also found that although plaintiff was unable to preform a full range of sedentary work he nevertheless retained the residual functional capacity to perform a

7

significant number of jobs that existed in the national economy and, thus, was not disabled (Tr. 505, Findings 7, 12-14).

### D. Standard of Review

Presently before the Court are the parties' cross-motions for summary judgment. In reviewing the administrative determination by the Commissioner, the question before the court is whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987). Substantial evidence is defined as less than a preponderance and more than a mere scintilla. Perales, 402 U.S. at 402. If supported by substantial evidence, the Commissioner's decision must be affirmed. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).

A five-step process is used to determine disability eligibility. See 20 C.F.R. § 404.1520.[2] Here, the ALJ determined that Plaintiff was not disabled at the fifth step which requires the Commissioner to prove that, considering the claimant's residual functional capacity,[3] age, education, and past work experience, he can perform work that exists in significant numbers

---

[2] The five-step sequential evaluation process for disability claims requires the Commissioner to consider whether a claimant: (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to his past relevant work, and (5) if not, whether he can perform any other work in the national economy. 20 C.F.R. §§ 404.1520, 416.920.

[3] A claimant's "residual functional capacity" is what he can do despite the limitations caused by his impairments. Fargnoli v. Massanari, 247 F.3d 34, 40 (3d Cir. 2001).

in the regional or national economy.  42 U.S.C. § 423(d)(2)(A).  See Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987); Sykes v. Apfel, 228 F.3d 259, 263 (3d Cir. 2000).

    **E.**    **Discussion**

Plaintiff initially argues that the ALJ erred by ignoring certain medical evidence.  In particular, Plaintiff points to the fact that the ALJ did not mention in his decision the functional capacity test performed at the Sharon Regional Hospital in December of 1991, wherein it was indicated that Plaintiff completed an Oswestry Pain Questionnaire showing results in the severe disability category and that the results of a Harvard Step Test indicated that Plaintiff fell into a "poor" cardiovascular classification (Tr. 142, 145).

Review of the ALJ's decision, however, indicates that the ALJ did not completely ignore the functional capacity evaluation performed in December of 1991, having noted in his decision that the evaluation indicated that Plaintiff was able to lift and carry 25 pounds (Tr. 503).  Further, contrary to Plaintiff's suggestion, the Oswestry Pain Questionnaire was not an objective assessment of Plaintiff's pain but, rather, a subjective evaluation as it was completed by Plaintiff himself.  As discussed more fully below, the ALJ determined that plaintiff's subjective complaints and allegations regarding his limitations were not totally credible or consistent with the severity of his condition as shown by the medical evidence (Tr. 503).  Thus, while the questionnaire was not expressly mentioned, the ALJ's decision nevertheless addressed Plaintiff's complaints contained therein.  As well, the mere fact that Plaintiff scored "poor" on a Harvard Step Test (Tr. 145), does not, standing alone, suggest that Plaintiff is unable to work particularly where Plaintiff indicated at the time that he could dress and cook for himself, hunt and fish,

gather wood, mow the lawn and vacuum, and it was found that he could lift and carry 25 pounds (Tr. 143, 147).

Plaintiff also contends that the ALJ erred by failing to give sufficient weight to other medical evidence that is "consistent with conditions that can reasonably be expected to produce the symptoms of which the claimant testified and which establish that the claimant is incapable of sustaining work at the substantially gainful activity level."[4] Specifically, plaintiff points to the results of an MRI taken in July of 1990, at Greenville Hospital, showing a cervical disc herniation at C-6, 7 and a mild bulging at C-5, 6; Dr. Felder's diagnosis in June of 1993, of status post concussion with post-traumatic headache, cervical myalgia with musculoskeletal pain secondary to the trauma, and chronic pain syndrom (Tr. 137); and Dr. Paxson's impression in February of 1990, of degenerative joint disease and spinal stenosis of the lumbar spine, myofascial syndrom, supratrochanterio bursitis with degenerative joint disease of left hip (Tr. 191-92). The findings on which Plaintiff relies, however, do not appear to have the import that Plaintiff suggests they do.

First, it should be noted that the regulations provide that certain issues are reserved exclusively to the ALJ, including the assessment of a claimant's residual functional capacity and whether he meets the statutory definition of disability. 20 C.F.R. §§ 404.1527(e)(1)-(2). Even a treating physician's opinion about a claimant's ability to work is not entitled to any "special significance," 20 C.F.R. §§ 404.1527(e)(1)-(3), and may reject it if there is a lack of clinical data supporting it or if there is contrary medical evidence. See Frankenfield

---

[4] Plaintiff's Brief, p. 6.

v. Bowen, 861 F.2d 405, 408 (3d Cir. 1988); Newhouse v. Heckler, 753 F.2d 283, 286 (3d Cir. 1985).

Here, none of the evidence cited by Plaintiff, including the opinions of his treating physicians, indicates that Plaintiff is unable to work. Indeed, the impression following the MRI taken at Greenville Hospital in July of 1990, is only that of suspected left central disc herniation at C-6, 7 as the cord appeared to be abutted by the disc material but not narrowed by it, and only minimal bulging at C-5, 6 (Tr. 286). Moreover, while Dr. Felder may have indicated in June of 1993 that Plaintiff suffered from status post concussion with post-traumatic headache, cervical myalgia with musculoskeletal pain secondary to the trauma, and chronic pain syndrom, he also stated that Plaintiff will most likely be limited to light duty work for the rest of his work life (Tr. 137). Finally, while Dr. Paxson's impression in February of 1990 was that of degenerative joint disease and spinal stenosis of the lumbar spine, myofascial syndrom, supratrochanterio bursitis with degenerative joint disease of left hip, as noted by the ALJ, it was also reported a week earlier that Plaintiff had no problems with walking or with balance and had no difficulty reaching over his head or almost to the floor (Tr. 130, 503). In addition, as also noted by the ALJ, Dr. Paxson indicated in May of 1990 that Plaintiff reported feeling better, prescribing only Motrin and Amitriptyline on an as need basis (Tr. 186, 503), and in August of 1990 indicated that Plaintiff was doing well with his general pain management and having less left shoulder pain (Tr. 160). As well, the ALJ's decision reflected the fact that Dr. Paxson decreased Plaintiff's therapy in September of 1990, opining that in six weeks he would be discharged from therapy altogether, and suggested that Plaintiff get vocational rehabilitation so that he could get a less demanding job (Tr. 161, 503). Thus, not only does it appear that the ALJ considered the reports of Drs. Felder

and Paxson but none of the reports appears to support a finding that Plaintiff is disabled as defined under the Act.  See Frankenfield v. Bowen, 861 F.2d at 408 (Finding that a treating physician's opinion is entitle to controlling weight if it is well supported by clinical and laboratory evidence and not inconsistent with the other substantial evidence of record.)

This evidence coupled with the other evidence of record upon which the ALJ relied, including the records of the Plaintiff's treating physicians, examining and evaluating physicians, and diagnostic evidence, amply supports the ALJ's findings that Plaintiff retained the residual functional capacity to perform a significant range of sedentary work through his last date insured.  Specifically, a cerebral CT scan, and shoulder and cervical spine x-rays taken immediately after Plaintiff's accident were all normal (Tr. 122-128, 200-02), as was another CT scan taken on November 21, 1989, and a left shoulder x-ray taken on January 19, 1990 (Tr. 196, 197).  Moreover, an x-ray of his lumbar spine and pelvis taken on the latter date showed only mild disc space narrowing and suspected degenerative disc disease at L4-5 (Tr. 196), and electromyeographic and nerve conduction studies of Plaintiff's lower extremities in January of 1992 showed no evidence of sensory neuropathy (Tr. 138-40).  Although Dr. Yaniko indicated in January of 1993, that he felt that Plaintiff had a cervical disc herniation and degenerative disc disease, he did not state that Plaintiff was disabled by the impairment or even articulate any functional limitations resulting from it (Tr. 273).  See Petition of Sullivan, 904 F.2d 826, 845 (3d Cir. 1990) (To be found disabling an impairment must provide restrictions that preclude work related activity).  As well, in the vocational profile prepared on November 9, 1994, at the behest of Plaintiff's counsel, it was found that Plaintiff was limited to, but could perform, sedentary-type work (Tr. 207-18).

Finally, Dr. Kumar, a state agency physician, evaluated the record and concluded that Plaintiff could occasionally lift/carry ten pounds, frequently lift/carry less than ten pounds, stand/walk at least two hours and sit for about six hours in an eight hour day which is consistent with the ability to perform sedentary -type work (Tr. 476).  While the state agency physicians are non-examining physicians, they "are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation." 20 C.F.R. § 404.1527(f).  Indeed, it is well established that an ALJ may rely on the opinions of non-examining physicians, even when those opinions contradict the opinion of a treating physician, if the opinions are consistent with the record.  Jones v. Sullivan, 954 F.2d 125, 129 (3d Cir. 1991).  Thus, it appears that the ALJ's determination that Plaintiff could perform the mild exertional requirements of sedentary work during the relevant period is supported by substantial evidence of record.

Plaintiff also argues that the ALJ erred by not adequately explaining why Plaintiff's testimony was not entirely credible.  In particular, Plaintiff complains that because the ALJ failed to analyze critical portions of the medical evidence he overlooked the foundation for Plaintiff's testimony and the effect his conditions had on his ability to carry on normal daily activities and work related functions.

Pursuant to federal regulations, the ALJ is required to ascertain whether a claimant has a medically determinable impairment that could reasonably cause the symptoms alleged and then to "determine the extent to which a claimant is accurately stating the degree of pain [or other symptoms] or the extent to which he or she is disabled by it." 20 C.F.R. § 404.1529; Hartranft v. Apfel, 181 F.3d at 362.  See Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983) (Credibility determinations as to a claimant's testimony regarding his limitations

are for the ALJ to make). An ALJ is not required to accept a claimant's testimony uncritically but may discredit a claimant's complaints of pain when there is contrary medical evidence in the record and the ALJ explains the basis for rejecting the complaints. Mason v. Shalala, 994 F.2d 1058, 1067 (3d Cir. 1993). The ALJ's credibility finding is entitled to deference and should not be discarded lightly, given her opportunity to observe the individual's demeanor. Murphy v. Schweiker, 524 F. Supp. 228, 232 (E.D. Pa. 1981).

Instantly, review of the ALJ's decision shows that he specifically stated that he evaluated Plaintiff's subjective complaints in accordance with the relevant regulation, 20 C.F.R. § 404.1529, and Social Security Ruling 96-7p. He then set forth the criteria that must be given consideration in evaluating a claimant's subjective complaints including the nature, location, duration, frequency, and intensity of his pain; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of medication; treatment other than medication for relief of pain; any functional restrictions; and the claimant's daily activities (Tr. 502). See 20 C.F.R. §§ 404.1529(c)(3)(I)-(vii). In considering these factors, not only did the ALJ analyze all of the relevant medical evidence as discussed above, but he found that the evidence of record failed to corroborate the severity of limitations as alleged by Plaintiff and was devoid of any evidence that Plaintiff could not perform the lifting and carrying of ten pounds or the limited standing and walking required in sedentary work (Tr. 503). The ALJ also pointed to the fact that Plaintiff took only Motrin and Amitriptyline on an as need basis and that he did not require a cane or assistive device to ambulate and was still able to drive. As well, the ALJ specifically referenced the fact that he had the opportunity to listen to Plaintiff's testimony and observe his demeanor and the fact that much of Plaintiff's testimony focused on the severity of his symptoms other than during

14

the relevant period (Tr. 501, 502, 503).  It therefore appears that the ALJ's findings that Plaintiff's complaints of pain during the relevant period are not entirely credible has substantial support in the record.  See Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997) (An ALJ's findings regarding a claimant's credibility is entitled to substantial deference.)

Moreover, contrary to Plaintiff's suggestion, the ALJ did not completely discount Plaintiff's testimony but took into consideration his allegations of dizziness and balance problems by reducing his capacity for sedentary work to jobs that did not require climbing, working at heights, balancing or working around dangerous machinery (Tr. 504).  As well, the ALJ took into consideration the option of sitting and standing at will to accommodate other claimed limitations (Tr. 504).  It therefore appears that the ALJ not only analyzed all of the medical evidence but considered the effect Plaintiff's condition had on his ability to carry on normal daily activities and work related functions.

Summary judgment is appropriate when there are no disputed material issues of fact, and the movant is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56; Edelman v. Commissioner of Social Sec., 83 F.3d 68, 70 (3d Cir. 1996).  In the instant case, there are no material factual issues in dispute, and it appears that the ALJ's conclusion is supported by substantial evidence.  For this reason, it is recommended that Plaintiff's motion for summary judgment be denied, that Defendant's motion for summary judgment be granted, and that the decision of the Commissioner be affirmed.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written

objections to this report. Any party opposing the objections shall have seven (7) days from the date of service of the objections to respond thereto. Failure to timely file objections may constitute a waiver of any appellate rights.

                                          Respectfully submitted,

                                          /s/ Amy Reynolds Hay
                                          AMY REYNOLDS HAY
                                          United States Magistrate Judge

Dated:   11 July, 2006

cc:      Hon. David S. Cercone
         United States District Judge

         Terry K. Wheeler, Esq.
         56 Clinton Street
         Greenville, PA 16125

         Jessica Smolar
         Assistant United States Attorney
         United States Attorney's Office
         700 Grant Street
         Suite 400
         Pittsburgh, PA 15219